UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>PETERS' BAKERY,<br><br>    Defendant. | Case No. 13-cv-04507-BLF<br><br>**ORDER GRANTING MOTION TO DISQUALIFY DEFENDANT'S COUNSEL**<br><br>[Re: ECF 56] |

Before the Court is the Motion to Disqualify Defendant's Counsel filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"). Pl.'s Mot., ECF 56. The EEOC contends that counsel for Defendant Peters' Bakery ("Defendant"), Robert David Baker, should be disqualified due to a conflict of interest arising from a telephone consultation that he had with charging party Marcela Ramirez when she was seeking legal advice regarding this action. The consultation did not result in employment, but Mr. Baker was subsequently retained as counsel by Defendant.

The Court held an evidentiary hearing on December 5, 2014 and heard testimony from a number of witnesses, including Ms. Ramirez and Mr. Baker. At Defendant's request, the Court also afforded the parties an opportunity to provide supplemental briefing regarding legal issues and evidence presented during the hearing. After careful consideration of the documentary and testimonial evidence, relevant legal authority, and all written submissions and arguments of counsel, the Court, for the reasons stated herein, GRANTS the EEOC's Motion to Disqualify Defendant's Counsel.

## I. FINDINGS OF FACT

In August of 2011, Marcela Ramirez was terminated from her employment with Defendant Peters' Bakery. In the underlying Complaint in this action, the EEOC alleges that Ms. Ramirez

was subjected to racial and ethnic slurs by Defendant's owner, Charles Peters, and that she was terminated on the basis of her race and/or national origin. *See* Compl. ¶ 8, ECF 1.

Following her termination from Peters' Bakery, Ms. Ramirez contacted her union and filed a claim with the EEOC. Because her union representative informed her that the union would only assist her in getting her job back, Ms. Ramirez also began contacting local employment lawyers seeking free legal advice or consultation regarding her "other legal rights." *See* Ramirez Decl. ¶¶ 2-4, ECF 57. In the course of her search, Ms. Ramirez wrote into a notebook the names and numbers of attorneys or law firms that she called, along with notes on her impressions of the attorneys that she was able to reach. A copy of the pages in the notebook was submitted into evidence, and the original was presented to Defendant for inspection at the evidentiary hearing. Among the law firms and attorneys listed is Mr. Baker's name with a "292-8555" phone number and an address at "1611 The Alameda" in San Jose. *See* Decl. of Cindy O'Hara Exh. 1, ECF 58-1; Amended Exh. 1, ECF 63.

Ms. Ramirez did not recall the contents of the notebook, nor consulting with Mr. Baker, until well into the pendency of the present action—around October of this year—when her son asked for a notebook and she unwittingly gave him the one containing her notes, which she thought to be empty. *See* First Ramirez Decl. ¶ 13. The notebook having refreshed her recollection, Ms. Ramirez testified that in the course of her search for legal counsel following her termination from Peters' Bakery, she called Mr. Baker's office and spoke with a woman named "Alexandra" or "Alexandria," a name that she remembered because it was the name of a good friend's daughter. The woman took down Ms. Ramirez's information and some details relating to her case and informed her that the attorney would call her back. Ms. Ramirez claims that a lawyer from Mr. Baker's firm did call her back, and that the lawyer discussed with her the details of her case, asked her questions regarding the witnesses to her termination, and opined that it was difficult to prove discrimination without witnesses. Ms. Ramirez recalls the lawyer advising her to "stick with the union" and leaving the conversation without much hope. *See* First Ramirez Decl. ¶¶ 7-10.

After discovering the notebook, Ms. Ramirez did not immediately notify her EEOC

2

attorneys of her prior consultation with Defendant's counsel, Mr. Baker. She credibly testified that she believed Mr. Baker, as an attorney with a better understanding of his professional obligations, would protect her confidence, and that his failure to disclose the prior communication indicated that there was no issue with his continued representation of Defendant. It was not until the recent deposition of a third party witness, Candy Borgess, in October 2014 that Ms. Ramirez realized there might be a problem when Mr. Baker questioned Ms. Borgess concerning information that Ms. Ramirez believed she had relayed in confidence to Mr. Baker during their prior consultation. At that point, Ms. Ramirez alerted the EEOC to her prior consultation with Mr. Baker and the EEOC filed the present motion to disqualify Mr. Baker on October 26, 2014. *See* First Decl. of Cindy O'Hara ¶¶ 3-4, 8, ECF 58.

Defendant disputes that Ms. Ramirez ever contacted Mr. Baker's firm and submitted records of phone messages from Mr. Baker's office, as well as the declarations of Mr. Baker's daughter, Alessandra Harris, who was his receptionist at the time, to demonstrate the lack of any record of Ms. Ramirez's call to Mr. Baker's office. *See* First Baker Decl. ¶¶ 11-12 and Exh. 1; First Decl. of Alessandra Harris, ECF 73-2; Second Decl. of Alessandra Harris, ECF 85. At the evidentiary hearing, Ms. Harris acknowledged that consultation appointments are not listed in the log of phone messages introduced into evidence because they are directly input into a separate calendar. Moreover, although Mr. Baker did not generally give free consultations in employment cases, Ms. Harris could consult with him on a case by case basis to determine whether he would waive the consultation fee or whether any of the exceptions to his policy applied. *See also* First Harris Decl. ¶ 6.

Mr. Baker also testified that Ms. Ramirez could not have reached his office at the number listed in her notebook because he changed phone numbers in 2009 and call forwarding from his old number—the one listed in the notebook—ended in September 2010. Thereafter, callers to the old number would hear a referral message providing Mr. Baker's new number; this message expired after nine to ten months.[1] First Baker Decl. ¶ 9. Mr. Baker acknowledged that though he

---

[1] The precise date on which call forwarding and the subsequent referral message expired appears to be a matter of some debate, as Ms. Harris's declaration indicates a different date. *See* First

had completed continuing legal education classes in office management, as required by the California Supreme Court following a prior disciplinary action, he did not recall having learned about conflict checking, nor did he maintain a formal mechanism in his office to check for conflicts of interest. Mr. Baker testified that he did not need a formal conflict checking system because he had only a "handful" of employer clients—as opposed to employee clients—and, as such, could readily determine if a conflict of interest such as the one at issue here arose in any of his employment law cases.

As an initial matter, the Court acknowledges the great difficulty that Defendant faces in attempting to prove a negative. As such, the Court's findings of fact on this motion turns as much on Ms. Ramirez's credibility as it did on the reliability of Mr. Baker's recordkeeping. While there were discrepancies in the testimony presented by both sides, the documentary evidence corroborates and supports Ms. Ramirez's recollection. For example, Ms. Ramirez's first declaration indicated that she believed she called law firms in August 2011 to April 2012. First Ramirez Decl. ¶ 6. The EEOC then introduced the records of other firms listed in Ms. Ramirez's notebook indicating that she called them in late December 2012 regarding an employment law matter involving Peters' Bakery. *See* Decl. of Geri Colbath Exh. A, ECF 77-1; Decl. of Kim Nguyen Exh. A, ECF 77-2. Ms. Ramirez subsequently submitted another declaration indicating that she thought she had contacted Mr. Baker in the August 2011 to April 2012 timeframe, but after reviewing the records of the other firms she called, now "remain[s] uncertain of the date" on which she called Mr. Baker's office. Second Decl. of Marcela Ramirez ¶ 2, ECF 80. Although her recollection of dates and phone numbers may be hazy, the records of the other law firms corroborate Ms. Ramirez's testimony that she called the firms listed in her notebook, in turn lending weight to her testimony that she also called Mr. Baker, who is also listed in the notebook.

In contrast, the evidence establishes that Mr. Baker's memory is not entirely reliable, even regarding events that transpired in this case. For example, on the first day of Ms. Ramirez's

---

Harris Decl. ¶ 10. Nevertheless, the Court credits Mr. Baker's evidence that had Ms. Ramirez called the number listed in her notebook in the 2011 to 2012 timeframe when she was conducting her search for legal representation, she would not have directly reached his office.

deposition in the underlying lawsuit, Mr. Baker forgot that he had received discovery from the EEOC and demanded immediate production of the requested documents, only to be reminded that he had already received them several days prior. *See* Second Decl. of Cindy O'Hara ¶¶ 2-6, ECF 79. Months later, Mr. Baker again demanded production of the same set of documents, subsequently acknowledging, after reminder by the EEOC, that he already had them in his possession.[2] *Id.* ¶¶ 7-8.

Likewise, the records that Mr. Baker offered to show that Ms. Ramirez never contacted his office suffer from a similar lack of rigor. Given the lack of detail in the telephone messages produced, the inconsistencies in Mr. Baker's practice of tracking calls from potential clients, and the lack of a formal system for checking for conflicts of interest, Defendant's evidence does not overcome Ms. Ramirez's corroborated testimony that she called the law firms identified in her notebook and made notes regarding the contacts that she made. Mr. Baker's testimony that he did not call Ms. Ramirez was uncorroborated. The brunt of Defendant's evidence was directed toward showing that Ms. Ramirez never called Mr. Baker's office in the first place, and other than Mr. Baker's testimony that he has "no recollection," *see* First Baker Decl. ¶ 12, there is no evidence tending to undermine Ms. Ramirez's testimony that Mr. Baker called her back to discuss her case.

Mr. Baker's office records and his own recollection are simply not reliable enough to refute Ms. Ramirez's credible testimony—corroborated by the records of other firms—that following her termination from Peters' Bakery, she reached out to the law firms listed in her notebook, consulted with attorneys at those firms she was able to reach, and wrote down her impressions of those firms in the notebook next to their names. As such, the Court credits Ms. Ramirez's testimony that she contacted Mr. Baker's office and that he called her back to discuss her case. Ms. Ramirez's testimony concerning her belief that Mr. Baker deposed Ms. Borgess using confidential information disclosed during her prior consultation is credited only for purposes

---

[2] At the evidentiary hearing, Mr. Baker testified that he had difficulty locating the production because the EEOC sent it to him via electronic mail without prior agreement between the parties to receive discovery by that means. The EEOC pointed out that its production was in response to Defendant's earlier production, which had also been delivered by electronic mail. *See* Second O'Hara Decl. Exh. 1.

of explaining Ms. Ramirez's delay in bringing the conflict to the EEOC's attention, and is not taken as evidence that Mr. Baker used confidential information against Ms. Ramirez.

## II. LEGAL STANDARD

All attorneys who practice before this Court are required to "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California." Civ. L.R. 11-4(a)(1). In determining whether to disqualify counsel, this Court therefore applies California law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006). The party seeking disqualification bears the burden of establishing by a preponderance of the evidence the existence of a disqualifying prior representation. *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11-CV-01189-LHK, 2011 WL 4635176, at *3 (N.D. Cal. Oct. 5, 2011) (citing *H.F. Ahmanson & Co. v. Saloman Bros.*, 229 Cal. App. 3d 1445, 1452 (1991)).

The decision to disqualify counsel for conflict of interest is a discretionary one that requires the careful balancing of a number of factors. *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). Given the potential for abuse, motions for disqualification are subjected to strict judicial scrutiny, and a court examines such motions carefully "to ensure that literalism does not deny the parties substantial justice." *People ex rel Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1144 (1999) ("*SpeeDee Oil*"); *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985). However, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar" and "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil*, 20 Cal. 4th at 1145.

Rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." In interpreting this rule, the California Supreme Court has indicated that it implicates both the attorney-client privilege, "a hallmark of our jurisprudence that furthers the

6

public policy of ensuring the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense," *id.* at 1146 (internal quotations and citations omitted), as well as the attorney's obligation of loyalty, a "related but distinct fundamental value of our legal system," *id.* Given these twin concerns animating the rule, "[t]he most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation," as "[s]uch patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences." *Id.* at 1147; *see also City & Cnty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006) ("*Cobra Solutions*") ("an attorney may not switch sides during pending litigation representing first one side and then the other").

For purposes of the conflict of interest analysis, an attorney represents a client "when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." *SpeeDee Oil*, 20 Cal. 4th at 1148. As such, the "fiduciary relationship" between lawyer and client can arise even out of "preliminary consultations" with a prospective client, "although actual employment does not result." *Id.* at 1147 (quoting *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978)). When the purported conflict arises out of a "preliminary conversation that did not result in professional employment or services," some courts applying *SpeeDee Oil* have required a further showing "directly or by reasonable inference, that the attorney acquired confidential information in the conversation." *Guifu Li*, 2011 WL 4635176, at *4 (quoting *Med-Trans Corp. v. City of California City*, 156 Cal. App. 4th 655, 668 (2007)). Other courts have held that "[w]hen the prior and current representations are in exactly the same matter . . . there is no exception to the conclusive presumption of the exchange of confidential information." *City Nat. Bank v. Adams*, 96 Cal. App. 4th 315, 330 (2002).

### III. DISCUSSION

Defendant primarily advances two arguments in opposition to the EEOC's motion to disqualify Mr. Baker: first, that the contact between Ms. Ramirez and Mr. Baker never happened,

*see* Def.'s Opp. 2-3, ECF 73, and second, that even if the phone consultation occurred, it was of such a preliminary nature that no disqualifying relationship could have formed, *id.* at 14-18.

As addressed in the findings of fact above, the Court rejects Defendant's factual argument and credits Ms. Ramirez's testimony that she contacted Mr. Baker's office and received a phone consultation with him concerning her termination from Peters' Bakery. Furthermore, there is no dispute that the subject of that consultation is "substantially related" to Mr. Baker's current representation of Defendant—in fact, both concern the same lawsuit. Under *Cobra Solutions* and *City National Bank*, upon which the EEOC relies, that fact alone requires that Mr. Baker be disqualified from this case. Pl.'s Mot. 4-6, ECF 56; Pl.'s Supp. Br., ECF 102. Defendant argues that the Court should apply *Med-Trans Corp. v. City of California City*, 156 Cal. App. 4th 655, 668 (2007), and require the EEOC to demonstrate "directly or by reasonable inference" that confidential information was exchanged during the consultation.[3] Def.'s Supp. Br. 2-3, ECF 97. Even applying that more lenient test, however, the Court concludes that the EEOC has satisfied its burden.

Defendant attempts to characterize Mr. Baker's consultation with Ms. Ramirez as "preliminary," and "peripheral," making much of the fact that the consultation occurred over the telephone. Def.'s Opp. 16-18. Although the consultation may have been "preliminary," it was anything but "peripheral," as Mr. Baker spoke directly with Ms. Ramirez concerning the present

---

[3] Defendant contends that *SpeeDee Oil* also stands for the proposition that when the prior representation involved a consultation that did not result in employment, there is no "conclusive presumption in favor of disqualification" unless the party seeking disqualification demonstrates that confidential information has been exchanged. Def.'s Supp. Br. 3. The Court does not read *SpeeDee Oil* so broadly. As Defendant properly notes, *SpeeDee Oil* distinguished *In re Marriage of Zimmerman*, 16 Cal. App. 4th 556 (1993), on the ground that there was no evidence that confidential information had been exchanged during the phone call at issue in *Zimmerman*. *SpeeDee Oil*, 20 Cal. 4th at 1148-49. Importantly, the *SpeeDee Oil* court credited the multiple factors weighing against disqualification identified by the *Zimmerman* court, including its finding that "the issue for which [the wife] consulted [the attorney] in 1989 had little connection with the issues remaining in dispute three years later when she moved for disqualification." *Id.* at 1149. That factors such as the length of the prior representation and the likelihood that confidential information was disclosed may also be considered does nothing to undercut the *SpeeDee Oil* court's unequivocal pronouncement that "[t]he most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation," *id.* at 1147, nor the Court's conclusion in this case that the fact that Ms. Ramirez sought consultation on the same case in which Mr. Baker now represents Defendant is a substantial factor weighing in favor of disqualification.

lawsuit and therefore had a "direct professional relationship" with her before he switched sides. *Cobra Solutions*, 38 Cal. 4th at 847. As such, this is unlike the situation in *In re Marriage of Zimmerman*, 16 Cal. App. 4th 556 (1993), where the wife sought to disqualify her husband's attorney based on a brief prior consultation with a different partner at the firm. *See id.* at 560.[4]

Defendant faults the EEOC for failing to provide in Ms. Ramirez's declaration "details" concerning the nature of the advice sought or "specifics" about the confidential information disclosed during her consultation with Mr. Baker. Def.'s Opp. 16-17. The EEOC is not required to disclose Ms. Ramirez's confidences in order to demonstrate that they were disclosed to Mr. Baker. Rather, such disclosure can be established, as it was here, "by reasonable inference." *Med-Trans*, 156 Cal. App. 4th at 668; *see also Guifu*, 2011 WL 4635176, at *4-5. Based on the circumstances under which Ms. Ramirez was contacting and consulting with attorneys, there is a high likelihood that confidential information would have been disclosed in her consultation with Mr. Baker, as such consultations seeking advice and representation form the types of attorney-client relationships where "confidential information material to the current dispute 'would normally have been imparted to the attorney.'" *Zimmerman*, 16 Cal. App. 4th at 564; *accord SpeeDee Oil*, 20 Cal. 4th at 1148. Ms. Ramirez testified credibly that in her consultations with other law firms—consultations that are corroborated by the records of those firms—she relayed confidential information and sought legal advice regarding her rights and the merits of her case. One can reasonably infer that as a potential client seeking legal advice and possible representation regarding her termination from Peters' Bakery, Ms. Ramirez would have shared similar information in her consultation with Mr. Baker. The likelihood that such consultations would involve the disclosure of confidential information was directly acknowledged—but distinguished—in *Med-Trans*, which "was *not* a case of a person who, in seeking to hire an attorney, shared confidences in the course of that consultation." 156 Cal. App. 4th at 669

---

[4] Likewise, the Court rejects Defendant's somewhat specious suggestion that a telephone call is too "attenuated" a contact for the formation of an attorney-client relationship. *See* Def.'s Opp. 17. The nature of an attorney-client relationship is not determined by the type of technology through which a potential client and an attorney communicate with one another. Confidences can be shared as easily over the telephone as they can in person or by electronic mail.

(emphasis in original).

It is furthermore not dispositive that Mr. Baker advised Ms. Ramirez to pursue her claim through her union or expressed his opinion that it would be difficult to prove her discrimination claim without witnesses. *See* Def.'s Opp. 16-17. The attorney-client privilege is designed to encourage clients "to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the [client] may have adequate advice," *SpeeDee Oil*, 20 Cal. 4th at 1146, and such advice necessarily includes the likelihood of success on one's claim. As such, the inference that confidential information was disclosed does not turn on an attorney's ultimate conclusions. Ms. Ramirez moreover testified that Mr. Baker questioned her about her case, including whether there were any witnesses to her termination. First Ramirez Decl. ¶ 9. One can reasonably infer from Mr. Baker's active participation in the consultation that Ms. Ramirez did much more than "outline" her case and that Mr. Baker offered more than "his initial impression and opinion" about her case. *Cf. Zimmerman*, 16 Cal. App. 4th at 560. That the consultation did not result in employment, and that Mr. Baker's professional advice may have been that Ms. Ramirez should not pursue her case in court, does not undermine the inference that confidential information was exchanged during a consultation wherein Ms. Ramirez sought legal advice and representation. First Ramirez Decl. ¶ 10.

At bottom, "[p]rotecting the confidentiality of communications between attorney and client is fundamental to our legal system." *SpeeDee Oil*, 20 Cal. 4th at 1146. "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process," and "[t]he courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *Id.* at 1146-47. The same holds true for those who are seeking legal representation, even though no employment follows. Ms. Ramirez believed that her conversation with Mr. Baker would be kept private, and she is entitled to have confidence in that loyalty from an attorney who advises her regarding the merits of her case. First Ramirez Decl. ¶ 10. That Mr. Baker neither recalls the consultation nor, presumably, what confidential information he received during the consultation, does not eliminate the risk that his memory may be triggered at any point as the present case

1   develops. *United States v. Sun Keung Lee*, No. CR 10-0186 MHP, 2011 WL 52599, at *2 (N.D.
2   Cal. Jan. 6, 2011) (citing *Global Van Lines, Inc. v. Super. Ct.*, 144 Cal. App. 3d 483, 488 (1983)).
3   As such, Mr. Baker must be disqualified from representing Defendant in this action.
4         Finally, a narrow exception to disqualification may be found where the party seeking
5   disqualification unjustifiably delays and the disqualification would prejudice the party whose
6   lawyer is being removed. *River West Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987). Here,
7   Ms. Ramirez credibly testified that, relying on what she believed to be Mr. Baker's professional
8   obligation, she treated Mr. Baker's failure to disclose the prior communication as an indication
9   that there was no issue with his representation of Defendant adverse to her. Only when she
10  believed that he had used confidential information disclosed during their consultation in deposing
11  a third party witness did Ms. Ramirez alert the EEOC of her prior contact with Mr. Baker.[5] This
12  sufficiently establishes that Ms. Ramirez's delay in seeking disqualification was not tactically
13  motivated. Defendant, for its part, submitted the declaration of Charles Peters regarding the
14  prejudice that he would suffer from having to seeking new counsel, namely the loss of trusted
15  counsel familiar with the case and the additional expense of obtaining new representation. *See*
16  Def.'s Opp. 18-19; Decl. of Charles Peters, ECF 73-3. However, Mr. Peters's declaration "simply
17  identified those client interests implicated by any disqualification motion" and is insufficient to
18  overcome the clear need for disqualification of an attorney who previously provided legal advice
19  to an adverse party in the same litigation. *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572,
20  599-600 (1991) (citing *Western Continental Operating Co. v. Natural Gas Corp.*, supra, 212 Cal.
21  App. 3d at pages 763–764).

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the EEOC's Motion to Disqualify Defendant's Counsel is GRANTED. Mr. Robert David Baker is disqualified from representation of defendant Peters' Bakery in this action. All proceedings in this action shall be

---

[5] The Court credits that testimony only to explain Ms. Ramirez's delay in alerting her present attorneys to her past consultation with Mr. Baker, and not to prove Mr. Baker's possession of confidential information. In any event, this precisely demonstrates the risk posed by permitting Mr. Baker to continue representing Defendant in this case.

stayed for **thirty (30) days** so that Defendant may locate and retain new counsel.

**IT IS SO ORDERED.**

Dated: December 22, 2014

_____
BETH LABSON FREEMAN
United States District Judge

12